**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KOHL HARRINGTON,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 20-1895 (JEB)** |
| **FOOD AND DRUG ADMINISTRATION,** *et al.*, | |
| **Defendants.** | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Kohl Harrington is a documentary filmmaker who has made a habit of submitting repeated Freedom of Information Act requests to the Food and Drug Administration about pet food. In this latest episode, he submitted eight such requests to FDA in spring 2020 and then filed this suit. In response, the agency has processed and produced thousands of pages of records, and only two of the eight requests remain at issue. The Government projects completing production on these two in early 2023 — after it finishes responding to Plaintiff's numerous other, earlier-filed requests. Dissatisfied with this state of affairs, Harrington now moves for partial summary judgment, asking the Court to order immediate production of all records responsive to the two outstanding requests. Because FDA and the Center for Veterinary Medicine — the branch of the agency responsible for the two requests — are processing Plaintiff's FOIA requests at an acceptable rate and because he has not accepted the agency's eminently reasonable offer to pause processing of his earlier-filed requests in order to complete this one within 60 days, the Court will deny his Motion.

1

I.      **Background**

Between April 26 and May 14, 2020, Harrington submitted eight FOIA requests to FDA.
See ECF No. 31-1 (Declaration of Sarah Kotler), ¶ 11; see also ECF No. 1 (Compl.), ¶¶ 7, 15,
23, 28, 34, 39, 44, 49.  Those requests sought far-reaching records concerning pet food, including
emails, videos, scientific-testing documents, and more.  See Kotler Decl. at 3–4.  Within
essentially the same timeframe, agency officials sent Plaintiff acknowledgement letters
confirming receipt of each of the eight requests.  Id., ¶ 11; see ECF No. 31-2 (Exh. 1 to Kotler
Decl.) at 1–16.  Harrington did not seek expedited processing of the requests pursuant to 5
U.S.C. § 552(a)(6)(E).  See Compl., ¶¶ 7, 15, 23, 28, 34, 39, 44, 49; Kotler Decl., ¶ 11.

Plaintiff then filed this lawsuit against Defendants FDA and Department of Health and
Human Services on July 14, 2020, 61 days after submitting the eighth request.  See Compl. at 10.
After the Court was assigned this case, it ordered the parties to "confer and submit a joint
proposed briefing schedule."  Minute Order of Aug. 24, 2020.  Rather than proposing a briefing
schedule, the parties filed a Joint Status Report stating that they "have been conferring about the
Freedom of Information Act requests at issue in this case and related matters," that "[t]hese
discussions have been productive and are ongoing," and proposing submitting a further status
report.  See ECF No. 7 (Joint Status Report of Sept. 4, 2020) at 1.  Over the next year, the parties
continued to submit Joint Status Reports while the agency processed and produced responsive
documents.  In fact, from March 25 to June 7, 2021, FDA processed and produced over 7,000
pages and a number of videos in response to six of the eight requests.  See Kotler Decl., ¶¶ 13–
16; see also, e.g., ECF No. 23 (Joint Status Report of Apr. 12, 2021) at 1–3.

FDA has now completed processing and production for all but two of Harrington's
requests in this case, and those requests are the subject of this Motion.  See Kotler Decl., ¶ 17.

Both requests (Nos. 2020-3793 and 2020-3795) are assigned to CVM's FOIA staff because they seek emails of CVM employees.  Id.  CVM, which is "one of FDA's smallest centers, and has one of FDA's smallest center FOIA staff,"  ECF No. 31-3 (Declaration of Sandra J. Cepeda), ¶ 10, has not yet produced the remaining documents because it faces an "increased backlog of FOIA requests" as well as an "unprecedented level of FOIA litigation."  Id., ¶¶ 11–12.  Indeed, Harrington himself is currently seeking voluminous records from CVM in at least one other FOIA lawsuit.  See Harrington v. FDA, No. 20-cv-656 (D.D.C.) (Harrington I).  In that earlier-filed case, CVM has made twelve productions, yet it still has hundreds of thousands of pages to review and produce.  See Cepeda Decl., ¶ 14.

Plaintiff now moves for partial summary judgment in this case with respect to the outstanding two requests.  In the Government's Opposition, it "estimates that it can begin processing these two requests in January 2023 and complete production to Plaintiff in March 2023."  ECF No. 31 (Gov. Opp.) at 11.  Defendants further note that they have offered to "pause [] processing in Harrington I for approximately 60 days to allow CVM to shift its resources to processing the two requests at issue here, with the intention to resume processing in Harrington I once processing and production in response to [these two requests] are complete."  Id. (citing Cepeda Decl., ¶ 20).  They also renew that offer once again.  Id. at 11 n.2.  Plaintiff, for his part, failed to file a reply brief or otherwise respond on the record to the agency's projected timeline or its offer to shift its efforts from the Harrington I requests to those at issue in this case.

## II.    Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247–48 (1986); Holcomb v.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. U.S. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith." SafeCard Services., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious," FOIA "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.    Analysis

Plaintiff's Motion asks the Court "to order Defendant to complete processing the outstanding requests and produce any responsive, non-exempt records immediately." ECF No. 27 (Pl. MSJ) at 3. In making such request, Harrington emphasizes (without any supporting citation) that FDA "has informed Plaintiff and the Court that it cannot say when it may do so." Id. at 2. Defendants, for their part, appear to contend at times that they need not provide any such timeline, that Plaintiff's "requested relief effectively is for a preliminary injunction," and that the Court "should deny the motion on the basis that Plaintiff is seeking injunctive relief without demonstrating, or even attempting to demonstrate, how the requirements for such extraordinary relief are met here." Gov. Opp. at 1–2. Elsewhere in the Government's Opposition, however, it both provides a timeline for producing the outstanding requests and offers to begin processing them immediately if Harrington wants CVM staff to shift their efforts from processing his other FOIA requests. Id. at 11 & n.2. The Court therefore need not address whether FDA was required to provide such a timeline for processing the outstanding requests, as it has now done so. Similarly, the Court has no occasion to dwell on whether this dispute is better analyzed through the summary-judgment or preliminary-injunction lens because, even under the former standard, Plaintiff's Motion founders.

Although the parties spill much ink on the appropriate procedural posture of the case and largely talk past each other, the issue for the Court to decide is simple: is FDA's timeline for processing Harrington's FOIA requests reasonable? For two independent reasons, the answer is yes.

First, by opting not to file a reply brief and not addressing the issue in his Motion, the Court may treat Plaintiff as conceding any objection to FDA's proposed production schedule.

See, e.g., Nat'l Sec. Couns. v. CIA, 898 F. Supp. 2d 233, 268 (D.D.C. 2012), aff'd, 969 F.3d 406

(D.C. Cir. 2020) ("[T]he Court may treat the plaintiff's failure to oppose the defendant's 12(b)(6)

arguments as a decision to concede those arguments."); Hunter v. D.C. Child & Fam. Servs.

Agency, 710 F. Supp. 2d 152, 157 (D.D.C. 2010) ("The District does not contest this fact in its

Reply and thus the . . . argument is deemed abandoned."); Shankar v. ACS-GSI, 258 Fed. Appx.

344, 345 (D.C. Cir. 2007) (plaintiff conceded the merits of an issue when he "did not respond in

any way to defendant's argument"); Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003)

("It is understood in this Circuit that when a plaintiff . . . addresses only certain arguments raised

by the defendant, a court may treat those arguments that the plaintiff failed to address as

conceded.").  Put another way, by not objecting to Defendants' anticipated production timeline in

his Motion and then not filing a reply brief, Harrington has forfeited any possible argument that

the schedule is unreasonable.

Second, even if Plaintiff had properly objected to FDA's timeline, the agency has the

better argument on the merits.  "Courts have broad discretion to determine a reasonable

processing rate for a FOIA request."  Colbert v. FBI, No. 16-1790, 2018 WL 6299966, at *3

(D.D.C. Sept. 3, 2018) (collecting cases).  While courts in this district have exercised that

discretion in somewhat different ways depending on the facts and posture of the case, they have

largely coalesced around the proper considerations that inform a reasonableness determination.

As Judge Dabney L. Friedrich put it, "Several factors inform the analysis, including the size and

compelling need of the request compared to others, as well as the effect of the request on the

[agency's] ability to review other FOIA requests."  Id.  Other "courts in this Circuit have

considered the effect of other FOIA requests when analyzing the burden on an agency of meeting

deadlines for review and production of FOIA material in a given case."  Middle E. Forum v. U.S.

Dep't of Homeland Sec., 297 F. Supp. 3d 183, 185 (D.D.C. 2018) (collecting cases).  For

instance, courts have looked to the volume of requests an agency faces, how much requests to the

agency have increased in recent years, the resources and capacity of the agency, other FOIA

litigation in which the agency is involved, the agency's release policies, and how ordering

swifter production would affect other FOIA requesters patiently waiting their turn.  See, e.g., id.

at 185–86; Colbert, 2018 WL 6299966, at *3; Energy Future Coalition v. Office of Mgmt. &

Budget, 200 F. Supp. 3d 154, 161 (D.D.C. 2016); Elec. Privacy Info. Ctr. v. U.S. Dep't of

Justice, 15 F. Supp. 3d 32, 47 (D.D.C. 2014); cf. Nat'l Sec. Counselors v. U.S. Dep't of Justice,

848 F.3d 467, 471–72 (D.C. Cir. 2017) (agency policy of processing 500 pages per request per

month "serves to promote efficient responses to a larger number of requesters"); Open America

v. Watergate Special Prosecution Force, 547 F.2d 605, 612, 614 (D.C. Cir. 1976).

      Applying the above principles, the Court concludes that Defendants have provided a

reasonable production schedule.  Consider first the heavy FOIA-related burden that CVM is

facing relative to its limited resources.  As referenced above, CVM has a very small FOIA staff

that is confronting a significant volume of both FOIA requests and litigation.  See Cepeda Decl.,

¶¶ 10–12.  In fact, CVM currently has a backlog of approximately 336 FOIA requests, some of

which seek thousands of pages of records.  Id., ¶ 11.  That backlog is due in no small part to

other FOIA requests and FOIA litigation filed by Harrington himself.  Plaintiff has submitted a

staggering 2,200+ FOIA requests to FDA since 2018, many of which concern records involving

CVM.  See Kotler Decl., ¶ 18.  The agency has responded to over 1,300 of these requests and

continues to process others.  Id.  With respect to Harrington's other FOIA litigation, moreover,

CVM staff has made twelve productions in Harrington I, totaling approximately 5,000 pages of

responsive documents, with approximately 15,000 potentially responsive records comprising

over 300,000 pages remaining to review and produce.  See Cepeda Decl., ¶ 14.  Indeed,

approximately 69% of CVM's First Reviewers are tied up with their assignments to review and

produce records sought by Plaintiff in Harrington I.  Id., ¶ 15.  As this Court has frequently

mused with respect to other agencies struggling under onerous FOIA burdens, one wonders how

CVM has time to do anything other than handle FOIA requests, particularly those from

Harrington.  In continuing to address FOIA, Congress may wish to bear in mind how many hours

of agency time a determined individual or entity can require.  Cf. Am. Ctr. for Law & Just. v.

U.S. Dep't of Homeland Sec., No. 21-1364, 2021 WL 5231939, at *3–4 (D.D.C. Nov. 10, 2021).

In addition to CVM's heavy FOIA burden — much of which Harrington is directly

responsible for — Plaintiff has put forth no compelling reason why he should be allowed to jump

the line in this case.  "For example, [he] has not asserted that [he] is entitled to expedited

processing under FOIA or its implementing regulations."  Middle E. Forum, 297 F. Supp. 3d at

186.  Such expedited processing is available "in cases in which the person requesting the records

demonstrates a compelling need."  5 U.S.C. § 552(a)(6)(E)(i)(I).  FOIA further defines

"compelling need" to mean:

> (I) that a failure to obtain requested records on an expedited basis . . .
> could reasonably be expected to pose an imminent threat to the life
> or physical safety of an individual; or
>
> (II) with respect to a request made by a person primarily engaged in
> disseminating information, urgency to inform the public concerning
> actual or alleged Federal Government activity.

Id. § 552(a)(6)(E)(v).  Here, Harrington did not so much as seek expedited processing, and even

if he had, he supplies no reason to think that he would have satisfied the Circuit's stringent test

for obtaining special treatment.  See Al-Fayed v. CIA, 254 F.3d 300, 309–11 (D.C. Cir. 2001).

The Government's projected timeline is all the more reasonable in light of its open offer to produce the disputed records within 60 days, if Plaintiff so chooses.  See Gov. Opp. at 11 & n.2.  By offering to pause processing in Harrington I to produce the records sought in this case, FDA is generously allowing Plaintiff to decide how he wishes to prioritize his various FOIA requests.  This case is thus distinguishable from one in which an agency tells a requester that it could not begin processing her request until it completes a third party's request.  Here, not only has FDA already fulfilled six of Harrington's eight requests, but he has himself to blame for the remaining production schedule: to promptly obtain the outstanding records, all he needs to do is ask the agency to shift its resources.  Against this backdrop, it is reasonable for FDA to ask Plaintiff to choose how he wishes his various requests to be prioritized.  If that were not the case, a single requester could hobble an agency and stymie all other FOIA requesters, all without satisfying the statutory criteria for expedited processing.

To the extent that Harrington mounts a significant counterargument that remains relevant after Defendants' Opposition, it is that "FOIA requires agencies to issue a determination within 20 (or extended to 30) business days and produce responsive non-exempt records 'promptly' thereafter."  Pl. MSJ at 1.  Here, Plaintiff refers to 5 U.S.C. § 552(a)(6), which dictates that "an agency must make and communicate its 'determination' whether to comply with a FOIA request — and communicate 'the reasons therefor' — within 20 working days of receiving the request, or within 30 working days in 'unusual circumstances.'"  Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n (CREW), 711 F.3d 180, 182 (D.C. Cir. 2013) (quoting 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i)).  Critically, however, Harrington's argument on this score "flows from [his] belief that [FDA]'s failure to respond to the FOIA Request within 20 days, as set forth in the FOIA statute, constitutes a per se violation of the law that entitles the requester to

get the requested records immediately." Elec. Priv. Info. Ctr., 15 F. Supp. 3d at 40.  On the

contrary, "nothing in the FOIA statute establishes that an agency's failure to comply with this

20-day deadline automatically results in the agency's having to produce the requested documents

without continued processing." Id.  Rather, "according to the D.C. Circuit [in CREW], '[i]f the

agency does not adhere to FOIA's explicit timelines, the penalty is that the agency cannot rely on

the administrative exhaustion requirement to keep cases from getting into court.'" Id. at 41

(quoting CREW, 711 F.3d at 189) (emphasis added in Elec. Priv. Info. Ctr.); accord New York

Times Co. v. Def. Health Agency, No. 21-566, 2021 WL 1614817, at *5 (D.D.C. Apr. 25, 2021).

In sum, even if Plaintiff is correct that FDA did not make a timely "determination" —

which does not require an agency to "actually produce the documents within the relevant time

period," CREW, 711 F.3d at 182 — he has not put forth any compelling reason to conclude that

FDA's proposed production schedule is unlawful.  See Elec. Priv. Info. Ctr., 15 F. Supp. 3d at 44

("The heart of this argument is [plaintiff's] insistence that, pursuant to the statutory text, an

agency must make a determination regarding a typical, non-expedited FOIA request within 20

days or suffer the consequence of a court order requiring production of the documents.  But as

this Court has already explained, the D.C. Circuit's CREW decision establishes otherwise.").

## IV.   Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for Partial Summary

Judgment.  A separate Order so stating will issue this day.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  January 20, 2022